HELTRA, INC., Plaintiff,

v.

RICHEN–GEMCO, INC., Defendant.

Civ. A. No. 73–439.

United States District Court,
D. South Carolina.

May 8, 1975.

Leo H. Hill, Ralph Bailey, Greenville, S. C., for plaintiff.

Charles W. Wofford and James C. Parham, Jr., Greenville, S. C., for defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

CHAPMAN, District Judge.

The plaintiff brought this action to obtain an accounting by the defendant of its net sales from a yarn processing machine from July 1, 1968 to date and judgment against the defendant in the amount of five percent of this figure plus interest. Plaintiff asserts that it is entitled to this relief pursuant to the terms of a sales agreement entered into by itself and Relset, Inc., defendant's predecessor in interest. The plaintiff alleges that this amount represents a portion of the consideration Relset, Inc. agreed to pay plaintiff in return for all its title, claim, and interest in a certain patent application, serial No. 625–873, an experimental model of a yarn processing apparatus (developed by one of plaintiff's owners, George Tradewell) along with all drawings of the apparatus and the tools used in its development. The defendant in its answer denies liability under the agreement and

asserts several defenses to the action and by way of counterclaim asked the Court to rescind the contract and order restitution because of failure of consideration and mistake of fact.

The case was tried without a jury on the 28th and 29th of April 1975 in Columbia, South Carolina. Pursuant to the Court's Order dated September 7, 1973, this trial was limited to issues of liability only. After hearing and considering the testimony of the witnesses and portions of depositions offered by the parties, as well as reviewing the exhibits and studying the applicable law, the Court makes the following findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1. That the plaintiff, Heltra, Inc. (hereinafter referred to as Heltra), is a corporation organized and existing under the laws of the commonwealth of Pennsylvania.

2. That the defendant Richen-Gemco, Inc. (hereinafter referred to as Richen) is a South Carolina corporation with its main offices in Greenville, South Carolina, in the District of South Carolina, Greenville Division.

3. That the amount in controversy exceeds $10,000.00.

4. That Relset entered into a purchase agreement with plaintiff on March 22, 1969 which provided for the purchase by defendant of a patent application, serial No. 625–873 and a yarn processing apparatus owned by Heltra as well as all drawings and development tools relating to the said apparatus. That part II of this agreement provided:

"As part of the agreed consideration, Heltra agrees to accept and Relset agrees to pay the sum of Twenty-Five Thousand ($25,000.00) Dollars payable as follows:

$10,000 in cash upon the execution of these presents (the receipt and sufficiency whereof is expressly acknowledged) and the balance of $15,000.00 to be paid in equal annual installments of $5,000.00 each on the first day of June of each succeeding year until paid in full."

That part III of the agreement provided in pertinent part as follows:

"As the balance of the consideration for said sale, Relset agrees to pay to Heltra by way of royalty the following sums upon the following basis and conditions to wit:

(a) A sum representing Five (5%) per centum of the NET SALES of Purchaser during the next ensuing Seventeen (17) year period calculated from July 1, 1968:

(b) The term 'NET SALES' as used herein shall mean Purchaser's gross cash receipts actually received during any one fiscal year for sale of only such of its products as incorporate or make use of said yarn processing apparatus (as covered by said patent application), . . . .."

That pursuant to the purchase agreement the defendant agreed to keep all proper books of account necessary to properly reflect the amount payable to the plaintiff and to make these books and all documents relating to these sales available to the plaintiff at reasonable times when so requested. That pursuant to the agreement the plaintiff agreed that it would no longer engage directly or indirectly in the manufacture, production or sale of any product to which the yarn processing apparatus in question related nor disclose or make known to any third party any of its confidential information in the field. That both parties agreed that in the event either should assign or transfer any interest it might possess under the terms of the agreement that the agreement would be fully binding upon the respective parties, their successors and assigns. That this agreement was drafted by an attorney employed by the defendant.

5. That the plaintiff has complied fully with all provisions of the agreement.

6. That all payments (totaling $25,-000.00) called for by Part II of the purchase agreement were made by the defendant on or before June 2, 1971. That none of the payments called for by Part III of the contract have been made.

7. That Relset, Inc. became a division of Richen, Inc. at some time prior to August 29, 1969. That Richen reaffirmed the conditions of the agreement between Heltra and Relset on August 29, 1969 by letter signed by Harry R. Kennedy, President of Richen, Inc. and Relset, Inc.

8. That in September 1969, Richen became the wholly owned subsidiary of Koracorp Industries. That Harry R. Kennedy, as vice-president of Richen, reaffirmed the agreement between Heltra and Richen's predecessor in interest Relset by letter dated October 15, 1969. That pursuant to articles of merger dated April 29, 1972, Richen was merged with Gemco, Inc., another wholly owned subsidiary of Koracorp Industries. That pursuant to these articles of merger Richen was merged into Gemco and all assets of Richen were thereby transferred to Gemco "subject to all liabilities and obligations of Richen which Gemco hereby assumes." That the defendant herein was designated the surviving corporation in this merger.

9. That Harry R. Kennedy served as President of Richen from 1967 until September 1969 and, as its Vice-President from September 1969 to September 1970. That he personally negotiated and subsequently signed the sales agreement which is the subject of this action.

10. That subsequent to the agreement of March 22, 1968, U. S. Patent No. 3,408,716 was issued on the application purchased by the defendant. That no evidence was introduced at the trial of this case to indicate that this patent has been declared invalid in any proceedings.

11. That it was the intent of the parties that the payment of the amounts specified in the agreement were to continue, regardless of whether a patent ever issued on the apparatus in question and regardless of the validity or invalidity of any patent which might have subsequently issued as a result of the patent application purchased, so long as the purchaser or its assigns continued to sell a yarn processing machine which utilized the basic concepts and apparatus sold them by the plaintiff.

12. That while defendant and its predecessors in interest have made certain improvements in the yarn processing apparatus purchased from plaintiff and covered by the patent application purchased at the same time, the Richen yarn processing machines marketed by the defendant to date do fall within the provisions of the sales agreement under consideration.

CONCLUSIONS OF LAW

It is clear that the Court has jurisdiction of this matter pursuant to 28 U.S. C. § 1332 due to the diversity of citizenship of the parties and the amount in controversy.

As noted above, it is undisputed that the defendant has complied with the provisions of Part II of the sales agreement i. e. the $25,000.00 initial payment. With regard to Part III of the agreement, it is plaintiff's contention that it is entitled to an accounting and to judgment in the amount of five percent of the net sales (as defined by the contract) of the defendant relating to the sale of such of its products as incorporate or make use of the yarn processing apparatus sold it by the plaintiff. The defendant, however, contends that plaintiff is not entitled to such relief because: (1) it has not utilized plaintiff's yarn processing apparatus or concepts in the yarn processing machines it has marketed; (2) the patent which subsequently issued upon the application acquired by it from the plaintiff is invalid thereby resulting in a failure of consideration; (3) the alleged invalidity of the patent which subsequently issued precludes as a matter of law the obligation to pay royalties as contemplated by the

sales agreement and (4) the plaintiff's actions should be barred by the Doctrine of Laches. By way of counterclaim the defendant asserts that it is entitled to restitution and rescission of the contract because of mutual mistake of the parties with regard to the validity of the subsequent patent which the defendant contends was the major consideration of the contract.

■ Defendant's first defense is based upon its allegation that it has not utilized the yarn processing apparatus purchased from the plaintiff. The Court, however, is unable to agree with this contention. As noted above (see Finding of Fact No. 12) the evidence clearly establishes that the yarn processing machines marketed by the defendant during the period in question are substantially similar to the prototype machine purchased from the plaintiff. While it is true that the defendant and its predecessors in interest made changes in certain aspects of the yarn processing apparatus (i. e. intake and exit nozzles were redesigned and a different source of heat was employed for the purpose of heating the yarn), it nevertheless appears from the testimony that the defendant continues to utilize essentially the same apparatus and to employ basically the same concept as found in the yarn processing unit purchased from the plaintiff. Thus defendant's contention that it has not utilized the plaintiff's concept and, therefore, is not indebted to the plaintiff under the provisions of Article III of the sales agreement is wholly without merit.

■ Nor does the Court find merit in the defendant's contention that if the patent which issued subsequent to its purchase of plaintiff's patent application is invalid it would be a material failure of consideration. While the agreement itself is ambiguous with regard to the effect, if any, non-issuance of a patent on the application or a subsequent declaration of invalidity of a patent if it did issue, would have upon defendant's obligations under the contract, the evidence clearly indicates that it was the intention of the parties that such events would have no effect upon the defendant's obligations under the contract.

■ It is, of course, well settled in South Carolina that while parol evidence is inadmissible to vary or contradict the terms of an agreement reduced to writing such evidence is admissible to ascertain the true meaning of an ambiguous contract. *Grayson v. Aetna Insurance Company*, 308 F.Supp. 922 (D.C. S.C.1970); *Soulios v. Mills Novelty Company*, 198 S.C. 355, 17 S.E.2d 869 (1941). The agreement in question was the subject of lengthy negotiations between the parties. Mr. Harry R. Kennedy, the president and owner of both Relset and Richen, represented the defendant's predecessor in interest in these negotiations. At trial the parties introduced correspondence pertaining to these preliminary negotiations between Relset and Heltra. This correspondence indicated that as late as February 27, 1968, the condition that a patent issue was indeed an important prerequisite to liability of the defendant under the sales agreement. The letter closest in time to the consummation of the sales agreement is dated February 27, 1968 and is addressed to Kennedy as president of Richen. In it Mr. William Warner (who apparently acted on behalf of Mr. Tradewell and a deceased co-owner's widow in these negotiations) related the conditions under which his clients were willing to sell the patent application and existing yarn processing apparatus. The pertinent portions of this letter are as follows:

".  .  . The only thing different between your offer in your letter of February 21st and what we are now willing to take, with George Tradewell's reluctant approval, is the amount of the down money at the signing of the agreement. We have been asking $15,000. In order to resolve all questions, George Tradewell has agreed that we will take $10,000

with the signing of the agreement. We would then expect you to pay $5,000 each following year for three years (provided that these payments will not be made unless the patent is issued—the $10,000 would be paid initially regardless). In addition to the total of $25,000, we would receive 5% of gross sales. As you can see, the only difference between us is the down money . . .."

From the above it appears that at this stage of the negotiations the subsequent issuance of a patent was a condition precedent to payment of at least a portion of the consideration to be paid by the defendant as contemplated by its agent. If such, a condition had been incorporated in the final agreement, it would be logical to imply that, if the subsequently issued patent were declared invalid, it would act as a condition subsequent relieving the defendant, of certain obligations under the contract. Likewise, if the agreement, which resulted from these negotiations, had contained such a provision the defendant's contentions would in all probability be persuasive. However, this is not the case since the agreement contains no provision relating to the issuance of a patent as a condition precedent to defendant's obligations, and the agreement was prepared by defendant's attorney.

Indeed, at the trial of the case, Kennedy testified that while he had insisted upon such a condition during the preliminary negotiations, he had been forced to agree to the deletion of such a condition in exchange for a concession by the plaintiff to accept a lower sales price. He indicated that originally plaintiff had demanded a lump sum of $40,000.00 for all rights to its yarn processing apparatus, but due to insufficient capital, he originated the idea of offering plaintiff a lower lump sum plus a percentage of sales over a period of time. He further indicated that the agreement eventually signed manifested the parties' intention that these payments would be paid regardless of whether a patent subsequently issued or whether the Relset apparatus eventually marketed was covered by the claims of any subsequent patent that might be issued on the application.

From the above the Court finds that it was the intent of the parties that the payments contemplated by the agreement be paid plaintiff so long as the basic concept of the yarn processing apparatus purchased was used in producing the defendant's yarn processing machines regardless of whether a patent covering the device subsequently issued or not. It is clear therefore that neither the issuance of a patent nor the validity of such patent, if issued, was the major consideration for the contract. Instead the Court finds that the major considerations for the defendant's agreement to make the payments contemplated by the agreement were plaintiff's ideas, the yarn processing apparatus, the patent application, the drawings relating to the patent apparatus and the tools used by the plaintiff in its development. Defendant intended to and did purchase everything plaintiff had relating to the apparatus and also plaintiff's promise not to divulge his idea to anyone else.

The defendant's third contention is that it is not obligated to pay "royalties" if the patent is invalid, because of the recent Supreme Court decision in *Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969). In *Lear* the Supreme Court held that a licensee is not estopped to contest the validity of its licensor's patent and would not be liable for royalties if the patent were declared invalid. While this Court is bound by decisions of the Supreme Court, it must respectfully decline defendant's attempt to substantially broaden that Court's decision in *Lear*. Unlike the situation in *Lear*, this case does not involve a licensor-licensee relationship. The plaintiff here never owned the patent in question

nor did the parties contemplate that it would. As the Court construes the agreement between the parties, the question of the validity or invalidity of the patent owned by the defendants is immaterial. The parties intended that installments be paid to plaintiff from the defendant's sale of yarn processing devices, which incorporated the apparatus purchased from the plaintiff. While the word "royalties" is used, it is clear that these payments are no more than installment payments in consideration for plaintiff's conveyance of the apparatus, tools, drawings, parts and the patent application. The contract provides for these payments to be made and measured on, "only such of its products as incorporate or make use of said yarn processing apparatus (*as covered by said patent application*)." (emphasis supplied). Had this provision been written so that payments were to be made "(covered by said patent should one issue)" then defendant's arguments that *Lear* should control might be somewhat more persuasive. This is not the case, however, and in the opinion of the Court *Lear* is not controlling.

With regard to the defendant's contention that the plaintiff's action should be barred by Laches, there has been no showing by the defendant that plaintiff's delay in initiating the present action was unreasonable nor that it worked any disadvantage to the defendant. For this reason it is the opinion of the Court that plaintiff is not guilty of Laches as a matter of law.

In light of the findings and conclusions stated herein, it is unnecessary for the Court to address itself to the defendant's counterclaim.

Therefore, the plaintiff is entitled to the accounting sought in this action, and it is ordered that the defendant produce all documents and records pertinent to the sales of its yarn processing machines from July 1, 1968 to date and that it deliver the same to the plaintiff's attorney within 10 days from the date of this Order.

It is also ordered that the parties appear before this Court in Greenville, South Carolina at 11:00 a. m. on June 20, 1975 for the purpose of trying the issue of damages should that become necessary.

And it is so ordered.